FILED
00 MAR -3 AM 10: 50
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JOHN D. DICICCO,            )
                            )
    Plaintiff,               )
                            )
vs.                          )   CV 99-BU-1198-S
                            )
WILLIAM J. HENDERSON,        )
POSTMASTER GENERAL AND       )
UNITED POSTAL SERVICE,       )
                            )
    Defendant.               )

ENTERED
MAR 0 3 2000

## MEMORANDUM OPINION

This case is presently pending before this Court on Defendant's Motion to Dismiss and/or for Summary Judgment. (Doc. 20) Plaintiff John D. DiCicco sued Defendant William J. Henderson and United Postal Service, his former employer, alleging that he was terminated in violation of the Rehabilitation Act. Defendant moves for dismissal and/or summary judgment on the following grounds: (1) the Court lacks subject matter jurisdiction over all claims in the Complaint except the claims brought pursuant to the Rehab Act; (2) the Complaint fails to state a claim upon which relief can be granted; (3) there are no genuine issues of material fact and Defendant is entitled to judgment as a matter of law as to Plaintiff's Rehab Act claim; (4) Plaintiff's fraud bars his recovery; and (5) punitive damages cannot be awarded against the Post Office.

This Court has reviewed the record and determined that Defendant's Motion to

30

Dismiss is due to be denied; Defendant's Motion for Summary Judgment is due to be granted in part and denied in part.

I. **STATEMENT OF FACTS**[1]

All dispositive motions filed with this Court are governed by Appendix A, which provides the guidelines for all submissions. With regard to the Moving Party's Reply Submission, Appendix A states:

> In its reply submission, the movant shall include a separate reply to the additional facts submitted by the party opposing the motion. This reply to the opposing [party's] additional facts shall contain a specific response to each footnoted proposition in the non-movant's narrative that either admits or disputes the matter set forth in that proposition and, *in the case of a disputed fact, a specific reference to the evidentiary record*. . . . All additional material facts set forth in the statement required of the non-movant will be *deemed admitted* for summary judgment purposes unless controverted by the statement of the movant.

(Original emphasis deleted; emphasis added).

The Court notes that Defendant's Reply to Plaintiff's Statement of Facts contains six statements that Defendant indicates are disputed. (*See* Defendant's Reply, Contested Facts, ¶¶ 15, 22, 23, 25, 48, 49. However, Defendant fails to cite the Court to any evidence in the record to demonstrate a genuine dispute. Therefore, for the purpose of deciding Defendant's motion for summary judgment, these facts are deemed "admitted."

---

[1]As required when determining a Motion for Summary Judgment, the Statement of Facts reflects the facts in the light most favorable to Mr. DiCicco, the non-moving party. All disputed facts are resolved in his favor, and all reasonable inferences arising from those facts are drawn in his favor. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89, 110 S. Ct. 3177, 3188-89, 111 L. Ed. 2d 695 (1990); *Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453, 1455 (11th Cir. 1997).

John D. DiCicco served in the United States Coast Guard from 1980 until his discharge in 1993 following a back injury. A year after he was discharged, he received a disability rating from the Department of Veterans Affairs of 40%. This included a rating of 20% attributable to "chronic low back pain" and 30% attributable to "major depression." Def. Exh. 2, p. 4.

In April 1997, Plaintiff took the Postal Service Entrance Examination and received a score of 90.3, to which was added 10 veteran points for a total score of 100.3. The 10 veteran points were based on the fact that Plaintiff was a veteran with "a service-connected, compensable disability" of 30% or more. Plaintiff's Exh. 5, § 321.232-.233. He was placed on the hiring register for a position as a data conversion operator. In August of that year he completed his application for employment.

Based on his score on the entrance examination, Mr. DiCicco was first on the list of eligible employees for the position of data conversion operator. In September 1997, Defendant interviewed Plaintiff for the position. At this time, Mr. DiCicco completed a Medical Examination and Assessment Form, Form 2485. The portion of the form completed by Mr. DiCicco indicated that he had never had or been treated for a "psychiatric condition." The form also indicated that he had four herniated discs. Mr. DiCicco indicated on the form that his use of alcoholic beverages had affected his "work performance, ability to obtain or hold a job or driving privileges, or resulted in arrests or court actions." Moreover, on the form he indicated that he had used "Marijuana, Hashish, Mescaline, LSD, PCP (*angel dust*), or other hallucinogenic drugs."

Dr. Cary G. Petry examined Mr. DiCicco as part of the application process. The

purpose of the examination was to determine if an applicant can perform the essential functions of the job. To this end, the examining physician releases only information directly relevant to determining whether the applicant can perform the job. Dr. Petry determined that Plaintiff could perform the essential functions of the data conversion operator position, which did not include bending, and that he did not appear to need an accommodation. Dr. Petry identified Plaintiff's physical/mental disability[2] as a "nonparalytic orthopedic impairment" of his back. Def. Exh. 9 (Form 2489).[3] According to Defendant's procedures, a disability identified on Form 2489 is to be transferred to the Form 50, which is the basic form used for all personnel actions and it contains information regarding an employee's personal information as well as information regarding his/her position and salary.

Defendant's Personnel Operations handbook states, "An appointment must not be made until the medical assessment portion of Form 2485 is received from the medical facility. It is essential that appointing official not hire those prospective appointees who are later found medically unfit for a position and for whom no reasonable accommodation is deemed possible." Exceptions are allowed when it is necessary to hire a "large number of employees on short notice." However, such employees' "continued employment is

---

[2]The form used by Defendant defines "reportable disability" as a "physical or mental impairment that substantially limits one or more major life activities (e.g. caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing learning, and working) or a record of such an impairment." Def. Exh. 9.

[3]This form requires the examining physician to select the code for the most disabling disability in cases involving multiple disabilities. Dr. Petry testified that the form was completed by Plaintiff, but that he agreed that Plaintiff's back injury was his "most disabling" disability.

subject to a determination of fitness . . . ."

A week following Mr. DiCicco's interview, he was sent a request from Mona Looser, Defendant's Occupational Health Nurse Administrator, requesting the following information:

1) VA Disability Rating Decision Reports #21-8796,
2) VA Compensation & Pension Exam Reports #21-2507 & 21-2545,
3) VA Outpatient Clinic records past 24 months,
4) All medical records civilian and military past 24 months (including psychiatric and psychological)

Def. Exh. 10. The request for information states, "No further determination can be made regarding your employment status until the findings of these determinations are received and reviewed." *Id*. Mr. DiCicco testified that he sent the requested records to Defendant. Other evidence in the record indicates that this occurred between September 24 and September 26. Defendant contends that it did not receive the requested records. Nevertheless, on September 26, 1997, Defendant notified Plaintiff by letter that he had been selected to a career position as a data conversion operator. Nothing in the letter indicates that the appointment was contingent upon a determination of medical suitability pending the review of the requested medical information. A reasonable jury could infer, therefore, that Defendant did indeed receive the medical information it had requested.

Plaintiff's entered the duty of the Defendant on September 27, 1997. Plaintiff had a 90-day probationary period, which would expire on December 25, 1997. Plaintiff's supervisor, Connie English, testified that Plaintiff was "right up there with the best" data conversion operators and that he was a good employee.

The parties agree, and the Court takes judicial notice of the fact that the weeks before the Christmas holiday are the busiest time for Defendant. Indeed, Ms. English

testified that the week of December 18th is the "heaviest week." Data conversion operators are often required to work two to four hours of overtime per eight-hour day. During this busy time, on December 18, 1997, Mr. DiCicco complained to Ms. English of back pain. He told her that his doctor had recommended that he take a couple of days off. Doug Ferrell, the manager of the remote encoding operations and Ms. English's supervisor, spoke with Mr. DiCicco the next day (Friday) and told him that he was going to review his medical records. The following Monday, Ms. English called Mr. DiCicco and told him that he was terminated. This was three days before the expiration of Plaintiff's probationary period.

Mr. Ferrell testified that Plaintiff was terminated before the expiration of his probationary period because he had a disability or he considered Mr. DiCicco as having a disability that made him medically unsuitable for work as a data conversion operator. At Plaintiff's unemployment hearing, Mr. Ferrell was asked:

> So essentially then during the probationary period you learned of this disability and you considered that this disability would not – the work he would be doing would not be appropriate for one with that disability; therefore, you terminated him during the probationary period?

Def. Exh. 17, p. 16. To which Mr. Ferrell responded, "Yes, sir." *Id.* Also, he testified:

> The job that . . . he was doing at the post office . . . requires continuous sitting, as much as six to eight hours a day and sometimes two or three months out of the year to the extent of ten or twelve . . . . What generated this was that much sitting had bothered him . . . . And it was hurting him at the time. And a review of his medical records revealed we had never really qualified him for suitability.

*Id.* at 26-27.

Ms. English testified that she had terminated Mr. DiCicco on December 22, 1997,

rather than allow him to submit the missing medical records, because his probation ended on December 25, 1997, and "if we had not terminated him at that point, the whole process would have been complicated by his probationary period being over." Def. 14, p. 68.

Due to his back injury, Mr. DiCicco is unable to run, to twist at the waist, to sit continuously for more than four hours, to lift or pull heavy objects, or to bend over to lift. He has pain, physical restrictions and functional limitations that preclude him from numerous occupations. However, his limitations may be accommodated by breaks in prolonged sitting, and limitations on bending and lifting requirements. Mr. DiCicco was able to perform his job without accommodation over an eight-hour shift.

## II.     **MOTION TO DISMISS**

### A.     **JURISDICTION**

Pursuant to Fed. R. Civ. P. 12(b)(1), Defendant moves to partially dismiss Plaintiff's claims for lack of subject matter jurisdiction. Defendant contends, "None of the jurisdictional bases alleged by plaintiff in his complaint confer subject matter jurisdiction upon this Court, with the exception of the cited provision of the Vocational Rehabilitation Act of 1973.[4] Therefore, the court lacks jurisdiction over any of [P]laintiff's claims under the other cited jurisdictional bases in [P]laintiff's complaint, and those claims must be dismissed pursuant to Rule 12(b)(1)." (Doc. 20 (footnote supplied)).

Plaintiff's Amended Complaint alleges one cause of action – violation of the Rehab

---

[4] Plaintiff's Amended Complaint states, "Jurisdiction arises under 42 U.S.C.A. § 2000e-5 (Title VII), 29 U.S.C.A. § 794 (Rehabilitation Act), 5 U.S.C.A. § 702 (APA), and 28 U.S.C.A. § 1331 (general federal question) and § 1343 (civil rights).

Act. Therefore, Defendant's motion to partially dismiss claims that are not asserted in the Amended Complaint is due to be denied.

In its reply brief, Defendant raises a separate issue regarding whether this Court has jurisdiction over Plaintiff's Rehab Act claim, an issue not raised in its initial submission.[5] Defendant argues, "Plaintiff has not claimed jurisdiction under Section 501 of the Rehabilitation Act, but rather Section 504, 29 U.S.C. § 794. (Amended Complaint, ¶ 2). It is highly questionable whether Section 504 confers subject matter jurisdiction over this plaintiff's amended complaint." Defendant's Memorandum in Reply (Doc. 28), p. 9.

Defendant's Motion to Dismiss is a facial attack on the Court's subject matter jurisdiction as set forth in the complaint.[6] "'Facial attacks' on the complaint require the

---

[5] *See* Statement of Issues Presented, Defendant's. Memorandum in Support of Motion for Summary Judgment [hereinafter "Def. Mem."] (Doc. 22), p. 3 ("Whether subject matter jurisdiction exists over any of plaintiff's claims **other than his claim under the Rehabilitation Act**." (emphasis added)). This Court will not grant a motion to dismiss or a summary judgment based on a ground raised in a reply submission, without giving the non-moving party a chance to respond. However, the Court addresses, *infra*, this issue because it has a significant effect on the claims at trial.

[6] The Eleventh Circuit Court of Appeals has recognized that "attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms" – "facial" attacks and "factual" attacks. *Scarfo v. Ginsberg*, 175 F.3d 957, . It held:

> Attacks on subject matter jurisdiction come in two forms: (1) facial attacks, and (2) factual attacks. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990) (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980)).
>
> Facial attacks on a complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in plaintiff's complaint are taken as true for the purposes of the motion. Factual attacks challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the

court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true." *McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999)(quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir.1990) (internal quotations omitted), *cert. denied*, 120 S. Ct. 940 (2000). Therefore, "when faced with a 12(b)(1) challenge to the face of a complaint, the plaintiff can survive the motion by showing ***any*** arguable basis in law for the claim made." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996)(emphasis added). Plaintiff argues and Defendant concedes that Plaintiff's Complaint alleges a claim under the Rehabilitation Act, 29 U.S.C. § 791. This is sufficient to withstand Defendant's motion to dismiss for failure to allege subject matter jurisdiction.

However, the Court agrees with Defendant that an action under § 501 of the Rehabilitation Act (29 U.S.C. § 791) is different from an action under § 504 (29 U.S.C. §

---

> pleadings, such as testimony and affidavits, are considered. This circuit has explained that in a factual attack, the presumption of truthfulness afforded a plaintiff under Federal Rule of Civil Procedure 12(b)(6) does not attach, and the court is free to weigh the evidence, stating:
>
>> [in a factual attack upon subject matter jurisdiction] the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction--it's very power to hear the case--there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.
>
> *Id*. at 960-61 (quoting *Lawrence*, 919 F.2d at 1529 (quoting *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir.1981)))(other citations and internal quotations omitted).

794) with regard to Plaintiff's burden of proof. See Def. Reply, pp. 10-11. Moreover, the Court notes that some courts have found that a federal agency's duty to accommodate is greater than that for federal grantees or private employers:

> Section 501's provision for affirmative action in addition to section 504's prohibition of discrimination against the disabled indicates that federal employers are charged with a **greater duty to ensure the employment of disabled workers** than are federal grantees or private employers. See Southeastern Community College v. Davis, 442 U.S. 397, 410, 99 S.Ct. 2361, 2369, 60 L. Ed.2d 980 (1979) (comparing a federal grantee's duty to accommodate to the greater duty placed upon federal employers under section 501); see also Kathryn W. Tate, The Federal Employer's Duties Under the Rehabilitation Act: Does Reasonable Accommodation or Affirmative Action Include Reassignment?, 67 TEX. L. REV. 781, 800-803 (1989). [FN6] "[T]he EEOC--the agency charged with enforcing section 501--has issued a directive providing that '**each agency has a special obligation to provide reasonable accommodation for employees who become disabled and to identify positions within the agency or in other agencies in which the individuals can function in spite of their disabilities**.' " Taylor v. Garrett, 820 F. Supp. 933, 936 (E.D. Pa.1993) (quoting Equal Employment Opportunity Management Directive No. EEO-MD-712, at 9 (Mar. 9, 1983)). Moreover, the federal government is directed to "become a model employer of individuals with handicaps." 29 C.F.R. § 1614.203(b) (1996).
>
> FN6. Because of the affirmative action duties placed upon federal employers under section 501, courts should be wary of applying cases interpreting federal grantees' duties of reasonable accommodation under section 504 to cases brought under section 501. See 67 TEX. L. REV. at 836; Fedro v. Reno, 21 F.3d 1391, 1398 (7th Cir.1994) (Rovner, J., dissenting).

Woodman v. Runyon, 132 F.3d 1330, 1338 (10th 1997).

### B. SUFFICIENCY OF PLAINTIFF'S COMPLAINT/AMENDED COMPLAINT

Defendant moves this Court for an order dismissing Plaintiff's Rehab Act claim on the grounds that "Plaintiff's complaint is insufficient on its face because it does not comply

with Rule 8, Fed. R. Civ. P., and therefore plaintiff's complaint must be dismissed for failure to state a claim upon which relief can be granted, because an essential element of plaintiff's claim is missing, and time to amend has elapsed." (Doc. 20).

The standard for determining whether Plaintiff's Complaint is due to be dismissed for failure to state a claim is well established -- "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957). Moreover, the *Conley* Court held:

> The Federal Rules of Civil Procedure do not require a claimant to set out in detail the **facts** upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant **fair notice** of what the plaintiff's claim is and **the grounds upon which it rests**. . . . The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

*Id.* at 47-48, 78 S. Ct. at 103 (emphasis added). The Court finds that Plaintiff's Amended Complaint sufficiently states a claim under the Rehab Act for disability discrimination -- based on a disability, a perceived disability, and/or a record of a disability.

### III.   MOTION FOR SUMMARY JUDGMENT

#### A.   SUMMARY JUDGMENT STANDARD

Summary judgment provides the parties an opportunity to test the mettle of their case before trial. On a motion for summary judgment, this Court must assess the entire record in order to ascertain whether there is a genuine need for a trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d

538 (1986)(quoting Advisory Committee Note to 1963 Amendment to Fed. R. Civ. P. 56(e)). Summary judgment is appropriate only if the Court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for its motion and specifically identifying evidence in the record that it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The moving party's burden is not meager; it must illuminate for the Court the reasons why the non-moving party cannot or does not raise a genuine issue of material fact sufficient to support a trial. *Clark*, 929 F.2d at 608. The moving party's burden was set forth in *Clark* as follows:

> The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment. *Celotex* did not change the general rule. *Celotex* simply holds that under certain circumstances the movant may meet its Rule 56 burden without negating an element of the non-moving party's claim and that under such circumstances it is sufficient to point to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden. Even after *Celotex* it is never enough to simply state that the non-moving party cannot meet its burden at trial.

*Id.* (citing *Celotex*, 477 U.S. at 323-25, 106 S. Ct. 2553-54).[7] In other words, the moving party must demonstrate that its motion is due to be granted before the burden shifts to the non-moving party to demonstrate an issue for trial.

Once the moving party has satisfied this initial burden, however, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994). "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(e)); *see Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). However, "Rule 56 . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Id.*; *see also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), *cert. denied sub nom. Jones v. Resolution Trust Corp.*, 516 U.S. 817, 116 S. Ct. 74, 133 L. Ed. 2d 33

---

[7]The Eleventh Circuit recognized that *Celotex* created "an exception to the *Adickes* [*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)] rule for [an] **uncommon** situation," i.e., "when neither party could prove either the affirmative or the negative of an essential element of the claim." *Clark*, 929 F.2d at 607, 608 (emphasis added). In this "uncommon situation," the *Celotex* exception allows a moving party to carry its burden by showing or "pointing out," by reference to record, that the non-moving party cannot prove its claim. *Id.* at 607.

(1995).

In resolving whether a given factual dispute requires submission to a jury, the Court must inspect the presented evidence through the looking glass of each party's substantive evidentiary burden. *Anderson*, 477 U.S. at 254-55, 106 S. Ct. at 513. The Court, however, must not weigh conflicting evidence for probity or make credibility determinations. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather determine whether such issues exist to be tried. The court must avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993)(citations omitted). "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." *EPL, Inc. v. USA Federal Credit Union*, 173 F.3d 1356, 1360 (11th Cir. 1999)(quoting *Clemons v. Dougherty County, Ga.*, 684 F.2d 1365, 1369 (11th Cir. 1982). At the same time, "[t]he nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'" *Tidwell v. Carter Products*, 135 F.3d 1422, 1425 (11th Cir. 1998) (quoting *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989)).

### B.   PRIMA FACIE CASE

Defendant contends that Plaintiff cannot establish a prima facie case of disability discrimination because he cannot show that he had a "disability" as defined in the statute. Def. Mem., p. 24. The Court has reviewed the record and determined that there are disputed issues of fact regarding whether Plaintiff has a severe impairment that

substantially limits one or more major life activities, and/or whether Defendant regarded Plaintiff as having a severe impairment that substantially limits one or more major life activities. Therefore, Defendant's Motion for Summary Judgment is due to be denied.

### C. ALLEGATIONS OF FRAUD

Defendant contends that it is entitled to a summary judgment as to Plaintiff's Rehab Act claim because of its "defense of fraud," which is based on Plaintiff's alleged falsification of his employment application, i.e., Defendant contends that Plaintiff failed to disclose his history of and disability related to depression on Form 2485.

The Supreme Court has established certain standards for evaluating defenses in employment discrimination cases based on after-acquired evidence of an employee's or applicant's misconduct, unrelated to the charges of discrimination. *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 115 S. Ct. 879, 130 L. Ed. 2d 852 (1995). In *McKennon*, the Supreme Court held that after-acquired evidence of wrongdoing does not operate as a bar to all relief from the discrimination, but it is relevant, if certain conditions are met, to the claimant's remedy for that discrimination. Defendant contends that because the alleged wrongdoing is "fraud in the inducement of federal employment" that this Court should not apply *McKennon* and should bar all claims for relief. Def. Reply, p. 22-23 ("While *McKennon* may be good law for the private sector, its application to situations in which applications for employment with federal agencies are falsified ignores the strong countervailing public policy against fraud in the inducement of federal employment.").

The Supreme Court held that allowing "after-acquired evidence of wrongdoing that would have resulted in termination [to] operate[ ], in every instance, to bar all relief for an

earlier violation of [the ADEA]" would not "accord" with the scheme, designed by Congress in Title VII and the ADEA to eliminate discrimination in the workplace." As stated above, Section 501 of the Rehab Act was enacted not only to eliminate discrimination in the workplace, but also to "ensure" the employment of disabled individuals. *Woodman*, 132 F.3d at 1338. Like the statutory schemes discussed in *McKennon*, the Rehab Act contains the "vital element:" "It grants an injured employee a right of action to obtain the authorized relief." *McKennon*, 513 U.S. at 358, 115 S. Ct. at 884; 29 U.S.C. § 794a(a)(1).

Thus, this Court finds that the Supreme Court's decision in *McKennon* applies to this case. Plaintiff's claim is not barred by after-acquired evidence of wrongdoing.

Moreover, the Court finds a disputed issue as to whether the after-acquired evidence of wrongdoing affects Plaintiff's damages at all. There is an issue in this case as to whether Defendant had the information it contends Plaintiff did not disclose on his application (in other words, whether the evidence of wrongdoing was "after acquired"). Plaintiff contends that he sent Defendant the records containing the VA disability rating for major depression and the record contains sufficient evidence from which a reasonable jury could find that Defendant received and reviewed those records. Thus, there is a disputed issue of fact as to whether the omission from Plaintiff's medical Form 2485 was revealed to Defendant only after it had terminated Plaintiff.[8] Therefore, Defendant's Motion for Summary Judgment premised on the "defense of fraud" is due to be denied.

---

[8]Obviously, if Defendant knew of the omission from Plaintiff's application prior to his termination but nevertheless did not terminate him on that ground, a reasonable jury could infer and find that the nature of the wrongdoing is not such that would cause Plaintiff's "immediate termination."

The Court, assuming that the omission was revealed to Defendant only after it terminated Plaintiff, notes that "[i]n order to benefit from the after-acquired evidence rule announced in *McKennon*, [Defendant] must prove that 'the misconduct revealed by the [after-acquired evidence] was so grave that [Plaintiff's] immediate discharge would have followed its disclosure in any event.'" *Wallace v. Dunn Construction Co.*, 62 F.3d 374, 379 (11th Cir. 1995)(quoting *McKennon*, 513 U. S. at 356, 115 S. Ct. at 883). In a footnote, the *Wallace* court held:

> . . ."[T]he pertinent inquiry, except in refusal-to-hire cases, is **whether the employee would have been fired upon discovery of the wrongdoing, not whether he would have been hired in the first instance**." *Kinetic Concepts, Inc.*, 49 F.3d at 1108. This approach is consistent with the Supreme Court's acknowledgment that the two dates which are relevant for the purpose of calculating backpay are the date of termination and the date that the employer discovered the fraud. . . . It also recognizes that the purpose of considering the after-acquired evidence is fashioning a remedy is "to take due account of the lawful prerogatives of the employer" and not to "punish the employee." . . . Finally, this approach acknowledges that "[m]erely asking whether the employee would have been hired fails to recognize that an employer may retain an individual, who has performed successfully."

*Id.* n.8. Neither party addresses whether Defendant would have immediately terminated Plaintiff upon discovery of the alleged fraud. In brief, the parties discuss to a limited extent whether Plaintiff would have been hired had he revealed he had suffered from depression. However, the issue of whether Defendant would have *hired* Plaintiff had it known of his depression is not the relevant issue; the relevant issue in this case is whether Defendant would have *immediately terminated* Plaintiff upon discovery of the alleged fraud on his application. The Court makes no determination as to this issue.

### D.   **PUNITIVE DAMAGES**

Defendant contends that it is entitled to summary judgment on the Plaintiff's claim for punitive damages.  Defendant argues that punitive damages are awarded in § 501 Rehab Act cases pursuant to 42 U.S.C. § 1981a, and, pursuant to § 1981a, governmental agencies are exempt from punitive damages, and the United States Postal Service is a governmental agency.  Plaintiff counters that the Postal Service is an independent establishment of the executive branch and federal law dealing with civil service employees does not apply to employees of the Postal Service; therefore, the prohibition of punitive damages awards against government agencies, set forth in 42 U.S.C. § 1981a, does not apply to cases against the Postal Service.

This Court finds that the United States Postal Service is a governmental agency and, therefore, Plaintiff may not recover punitive damages. *See Robinson v. Runyon*, 149 F.3d 507, 515-17 (10th Cir. 1998)(citing, *inter alia*, *Baker v. Runyon*, 114 F.3d 668, 670-72, (6th Cir. 1998); *Miller v. Runyon*, 932 F. Supp. 276, 277 (M.D. Ala. 1996)).  As to this issue, Defendant's Motion for Summary Judgment is due to be granted and Plaintiff's claim for punitive damages is due to be dismissed.

### IV.   **CONCLUSION**

Based on the foregoing, Defendant's Motion to Dismiss is due to be denied. Defendant's Motion for Summary Judgment is due to be granted as to Plaintiff's claims for punitive damages and that claim is due to be dismissed.  As to all remaining claims, Defendant's Motion for Summary is due to be denied.  Plaintiff's claim under the Rehabilitation Act, §§ 501 and/or 504, remain to be tried.  Defendant may assert the

affirmative defense of after-acquired evidence of wrongdoing, as set forth in *McKennon*, as to Plaintiff's claims for relief; however, Defendant must prove (1) that the evidence of "fraud" was discovered only after Plaintiff was terminated, and (2) that the omission of depression from Plaintiff's Form 2485 would have resulted in his immediate discharge.

DONE this 2nd day of March, 2000.

_____
H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE